UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LHF PRODUCTIONS, INC, <br><br> Plaintiff, <br><br> v. <br><br> DOE 1, *et al.*, <br><br> Defendants. | Case No. C16-621RSM <br><br> ORDER GRANTING IN PART LHF'S MOTIONS FOR DEFAULT JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff LHF Productions, Inc.'s ("LHF") Motion for Default Judgment against Roselen Torres (Dkt. #35), and Motion for Default Judgment Against Sherwin Mendoza (Dkt. #37). Having reviewed the relevant briefing and the remainder of the record, LHF's motions for default judgment (Dkts. #35 and #37) are GRANTED IN PART for the reasons discussed below.

## II. BACKGROUND

LHF's motions for default judgment are just a portion of more than fifty default judgment motions filed by LHF in ten of sixteen related cases before the Court.[1] All sixteen

---

[1] *See* Case Nos. C16-551RSM, C16-552RSM, C16-621RSM, C16-623RSM, C16-731RSM, C16-864RSM, C16-865RSM, C16-1015RSM, C16-1017RSM, C16-1175RSM, C16-1089RSM, C16-1090RSM, C16-1273RSM, C16-1354RSM, C16-1588RSM, and C16-1648RSM.

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 1

cases assert the same cause of action. LHF alleges that close to two hundred named Defendants unlawfully infringed its exclusive copyright to the motion picture *London Has Fallen*, which it developed and produced, by copying and distributing the film over the Internet through a peer-to-peer network using the BitTorrent protocol. Plaintiff uncovered the identities of the alleged infringers after serving several internet service providers ("ISP"s) with subpoenas issued by the Court. Amended complaints identifying the alleged infringers were subsequently filed. Defendants are named in the same Amended Complaint because, given the unique identifier associated with a particular digital copy of *London Has Fallen*, along with the timeframe when the internet protocol address associated with a named Defendant accessed that unique identifier, LHF alleges the Defendants were all part of the same "swarm" of users that reproduced, distributed, displayed, and/or performed the copyrighted work. Dkt. #14 ¶¶ 10, 35-36. According to LHF, "[t]he temporal proximity of the observed acts of each Defendant, together with the known propensity of BitTorrent participants to actively exchange files continuously for hours and even days, makes it possible that Defendants either directly exchanged the motion picture with each other, or did so through intermediaries . . . ." *Id*. ¶ 30.

In the instant action, Defendant Torres and Defendant Mendoza (collectively "Defendants") did not respond to LHF's Amended Complaint. The Court entered default against Defendants on October 18, 2016, after both parties failed to respond to LHF's Amended Complaint. *See* Dkts. #31 and #32. LHF's motions for default judgment against Defendants are now before the Court.

### III.   DISCUSSION

Based on this Court's Order of Default and pursuant to Rule 55(a), the Court has the authority to enter a default judgment. Fed. R. Civ. P. 55(b). However, prior to entering default

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 2

judgment, the Court must determine whether the well-pleaded allegations of a plaintiff's complaint establish a defendant's liability. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In making this determination, courts must accept the well-pleaded allegations of a complaint, except those related to damage amounts, as established fact. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). If those facts establish liability the court may, but has no obligation to, enter a default judgment against a defendant. *Alan Neuman Prods. Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("Clearly, the decision to enter a default judgment is discretionary."). Plaintiffs must provide the court with evidence to establish the propriety of a particular sum of damages sought. *Televideo*, 826 F.2d at 917-18.

    A. <u>Liability Determination</u>.

The allegations in LHF's Amended Complaint establish Defendants' liability for copyright infringement. To establish copyright infringement, LHF must demonstrate ownership of a valid copyright and that Defendants copied "constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Here, LHF alleges it owns the exclusive copyright to the motion picture *London Has Fallen*. Dkt. #14 ¶¶ 5-9. LHF also alleges that Defendants all participated in the same "swarm" that unlawfully copied and/or distributed the same digital copy of *London Has Fallen*. *Id.* ¶¶ 10, 26, 29, 30, 40. Because Defendants did not respond to LHF's complaint, the Court must accept the allegations in LHF's Amended Complaint as true. *See* Fed. R. Civ. Proc. 8(b)(6). Accordingly, LHF has established Defendants' liability.

    B. <u>Default Judgment is Warranted</u>.

The Court must next determine whether to exercise discretion to enter a default judgment. Courts consider the following factors in making this determination:

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 3

"(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72.

The majority of these factors weigh in favor of granting default judgment against Defendants. LHF may be prejudiced without the entry of default judgment as it will be left without a legal remedy. *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (finding plaintiff would suffer prejudice where denying default judgment would leave plaintiff without remedy). LHF's Amended Complaint is also sufficient, and Defendants did not present any evidence or argument to the contrary. Additionally, the Court finds there is a low probability that default against Defendants was due to excusable neglect; Defendants were given ample opportunity to respond to the filings in this matter between the time they were served with LHF's Amended Complaint and when LHF filed its motions for default judgment. Finally, although there is a strong policy favoring decisions on the merits, the Court may consider Defendants' failure to respond to LHF's Amended Complaint and its subsequent motions as an admission that LHF's motions have merit. *See* Local Civil Rule 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

However, the Court acknowledges that a dispute concerning the material facts alleged by LHF may arise. *See Qotd Film Inv. Ltd. v. Starr*, No. C16-0371RSL, 2016 WL 5817027, at *2 (W.D. Wash. Oct. 5, 2016) (acknowledging that dispute concerning material facts may arise in BitTorrent infringement cases). The Court also acknowledges that the amount at stake is not, as LHF contends, modest – LHF seeks enhanced statutory damages in the amount of $2,500 along with $2,393.50 in attorneys' fees, and $140 in costs, for each named Defendant in

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 4

this matter. Dkts. #36 ¶¶ 11-12 and #38 ¶¶ 11-12. Notwithstanding these considerations, the *Eitel* factors weigh in favor of granting default judgment against Defendants.

C. <u>Appropriate Relief</u>.

The Court next considers what relief to grant LHF. LHF seeks the following three categories of relief from each defendant: (1) permanent injunctive relief; (2) statutory damages; and (3) attorney's fees and costs. Each category is discussed in turn below.

i. *Permanent Injunctive Relief*

Permanent injunctive relief is proper in this matter. Section 502(a) of Title 17 of the United States Code allows courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." As part of a default judgment, courts may also order the destruction of all copies of a work made or used in violation of a copyright owner's exclusive rights. 17 U.S.C. § 503(b). Given the nature of the BitTorrent system, and because Defendants have been found liable for infringement, the Court finds Defendants possess the means to continue infringing in the future. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (granting permanent injunction where "liability has been established and there is a threat of continuing violations."). Consequently, the Court GRANTS LHF's request for a permanent injunction against Defendants. The Court will issue a permanent injunction enjoining Defendants from infringing LHF's rights in *London Has Fallen*. The Court will also order Defendants to destroy all unauthorized copies of *London Has Fallen*.

ii. *Statutory Damages*

The Court will also award LHF $750 in statutory damages for Defendants' infringement of the same "seed" file of *London Has Fallen*. The Copyright Act allows plaintiffs to choose

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 5

between actual or statutory damages. *See* 17 U.S.C. §§ 504(b), (c)(1). The range of statutory damages allowed for all infringements involved in an action, with respect to any one work for which any two or more infringers are jointly and severally liable, is $750 to $30,000. 17 U.S.C. §504(c)(1). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima," and they can take into account whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984); *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar*, 725 F. Supp. 2d at 921). Because the named Defendants in this action were alleged to have conspired with one another to infringe the same digital copy of LHF's motion picture, the Court will award the sum of $750 for Defendants' infringement of the same digital copy of *London Has Fallen*. Each of the Defendants is jointly and severally liable for this amount.

LHF argues that a statutory damage award of $2,500 per defendant should be awarded. The Court is not persuaded. Statutory damages are not intended to serve as a windfall to plaintiffs, and enhanced statutory damages are not warranted where plaintiffs do not even try to demonstrate actual damages. Additionally, the Court notes that LHF has not shown that any of the Defendants is responsible for the "seed" file that provided LHF's copyrighted work on the BitTorrent network, and LHF has not presented evidence that Defendants profited from the infringement.

LHF's additional attempts to justify imposing enhanced statutory damages are also unpersuasive. *See* Dkts. #35 at 5-6 and #37 at 5-6. In support of an enhanced award, LHF argues that minimum statutory awards fail to accomplish the goals of the Copyright Act; LHF argues that defendants are actually encouraged to disregard court summons and take default

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 6

judgments when courts award minimum statutory damages. *Id*. The Court is not convinced. As noted in other BitTorrent cases within this jurisdiction, "[p]laintiff offers no support for the proposition that participation in federal litigation should be compelled by imposing draconian penalties that are out of proportion to the harm caused" by a defendant's actions. *Qotd Film*, 2016 WL 5817027, at *3, n.2.

LHF also cites to tweets which appear to mock statutory minimum awards in other BitTorrent cases. *See* Dkts. #36, Exs. C and D and #38, Exs. C and D. The Court is not persuaded that viewpoints of individuals not named as defendants in this matter should be attributed to Defendants. LHF has presented no evidence that Defendants in this case will not be dissuaded from infringing in the future. Many barriers to accessing and understanding the legal system exist, and the Court refuses, absent evidence to the contrary, to adopt the position advocated by LHF. The Court "is [thus] not persuaded that a higher award is appropriate simply because certain members of the BitTorrent community are not impressed by a $750 award against someone they do not know." *Qotd Film*, 2016 WL 5817027, at *3.

        iii.    *Attorneys' Fees and Costs*

Finally, LHF asks the Court to award $2,393.50 in attorneys' fees, and $140 in costs, against each named Defendant in this matter. Dkts. #36 ¶¶ 11-12 and #38 ¶¶ 11-12. Pursuant to 17 U.S.C. § 505, the Court "in its discretion may allow the recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."

The Court agrees that LHF should be awarded attorneys' fees. Courts consider several factors, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 7

compensation and deterrence," when making attorneys' fee determinations under the Copyright Act. *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). Because LHF has succeeded on its non-frivolous claims, and because an award would advance considerations of compensation and deterrence, LHF is entitled to attorneys' fees.

However, LHF's attorneys' fees request is problematic. Courts determine fee award amounts by first determining a "lodestar figure," which is obtained by multiplying the number of hours reasonably expended on a matter by the reasonable hourly rate. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Courts may then adjust the lodestar with reference to factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). The relevant *Kerr* factors here are: (1) the time and labor required; (2) the novelty and difficulty of the questions; and (3) the skill requisite to perform the legal services properly. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel*, 6 F.3d at 622. Given the nature of the work done by attorney David A. Lowe, the Court does not find LHF's requested hourly rate, or the number of hours requested, to be reasonable.

1. *Reasonableness of Rate Requested*

In the Ninth Circuit, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986). Instead, the reasonable hourly rate is determined with reference to the prevailing rates charged by attorneys of comparable skill and experience in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "Generally, when determining a

reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Courts may also consider "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney" as "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Mr. Lowe argues that $450 is a reasonable rate for his work. However, Mr. Lowe does not present any evidence that this is the prevailing rate in this community, and similar cases in this District suggest that a lower rate is appropriate. *See Qotd Film*, 2016 WL 5817027 at *3-4 (refusing to award requested rate of $450 where counsel did not present evidence that this was prevailing community rate). Notably, in two unrelated BitTorrent cases litigated by Mr. Lowe, courts in this District have awarded Mr. Lowe a rate of $350 and $300 for work similar, if not identical, to the work done in this matter. *See Id*. (reducing counsel's hourly rate to $350); *also Dallas Buyers Club, LLC v. Nydam, et al.*, 2016 WL 7719874, at *5-6 (W.D. Wash. August 8, 2016) (reducing counsel's hourly rate to $300). In *Dallas Buyers Club*, the Court reasoned that an hourly rate of $300 is far more appropriate because the cases litigated by Mr. Lowe did not require extensive skill or experience. 2016 WL 7719847 at *6. Indeed, it appears that in litigating *Dallas Buyers Club*, Mr. Lowe, similar to his actions in this case, recycled pleadings used in other cases and encountered little or no opposition from the named defendants. *Id*. Given that Mr. Lowe's work in this matter amounts to nothing more than form pleading, the Court adopts the reasoning of other BitTorrent cases in this District and will reduce Mr. Lowe's hourly rate to $300.

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 9

2. *Reasonableness of Hours Requested*

Turning to the reasonableness of the hours requested, the Court notes the party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court also excludes hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id*. at 434. Further, the Ninth Circuit has held that it is reasonable for a district court to conclude that the party seeking attorney's fees fails to carry its burden of documenting the hours expended when that party engages in "block billing" because block billing makes it more difficult to determine how much time was spent on particular activities. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

Mr. Lowe requests an unreasonable number of hours. In support of his attorneys' fees request, Mr. Lowe has submitted two, nearly identical, declarations requesting compensation for 3.2 hours he allegedly spent on each named Defendant. *See* Dkts. #36 and #36. Mr. Lowe also requests fees for the 1.9 hours his associate attorney spent on each named Defendant (at an hourly rate of $250), and fees for the 3.3 hours his legal assistant spent on each named Defendant (at an hourly rate of $145). *Id*. Mr. Lowe's activity within this District underscores the unreasonableness of this request.

Since April 2016, Mr. Lowe has filed sixteen cases, each naming LHF as plaintiff, against hundreds of doe defendants.[2] These cases have all proceeded in a similar manner. Each of the complaints originally filed in these sixteen cases lists doe defendants, identified only by IP addresses, and alleges infringement of LHF's exclusive rights in the motion picture *London Has Fallen*. Groups of doe defendants are named in the same complaint because they

---

[2] *See* Case Nos. C16-551RSM, C16-552RSM, C16-621RSM, C16-623RSM, C16-731RSM, C16-864RSM, C16-865RSM, C16-1015RSM, C16-1175RSM, C16-1017RSM, C16-1089RSM, C16-1090RSM, C16-1273RSM, C16-1354RSM, C16-1588RSM, C16-1648RSM.

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 10

allegedly infringed the same digital copy of *London Has Fallen* by participating in the same BitTorrent "swarm." After nearly identical complaints were filed, LHF, in all sixteen cases, filed nearly identical motions for expedited discovery. Once the Court granted LHF's motions for expedited discovery, LHF then served subpoenas on the ISPs associated with each Doe Defendant's IP address. Once the ISPs provided LHF with the Doe Defendants' identities, LHF filed amended complaints. Except for the paragraphs identifying the Doe Defendants, all of the amended complaints are identical. As of the filing of this Order, LHF has named 181 defendants.

After amending its complaints, LHF voluntarily dismissed claims against some named Defendants. If a claim is not settled, LHF continues to pursue its claim against the named Defendants. Many of the remaining defendants have not answered LHF's amended complaints. A named Defendant's failure to respond to LHF's amended complaints then prompts LHF to file a motion for default. To date the Court has granted fifty-eight of LHF's motions for default in eleven of LHF's sixteen cases; LHF is still awaiting response from named defendants in the five remaining cases. Except for the captions, the motions for default are identical. After the Court grants LHF's motions for default, LHF files nearly identical motions for default judgment.

While there is nothing wrong with LHF's filing of several infringement claims, it is wrong for LHF's counsel to file identical complaints and motions with the Court and then expect the Court to believe that it spent *hundreds* of hours preparing those same complaints and motions. *See Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912-13 (E.D. Mich. 2014) ("If Malibu Media is experiencing a massive invasion of infringers, it is entitled to seek redress through the courts."). In this case, Mr. Lowe would have the Court believe that he alone spent

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 11

185 hours in preparing the filings of the fifty-one named defendants against whom default judgment is now sought. This extravagant number of hours does not include the 138.6 hours claimed by Mr. Lowe's associate attorney, or the 130.4 hours attributed to Mr. Lowe's legal assistant.

There is nothing unique, or complex, about engaging in what can only be described as "the essence of form pleading," and the Court will not condone unreasonable attorneys' fees requests. *Malibu*, 31 F. Supp. 3d at 912-13 ("[T]here is nothing unique about this case against [defendant], it is quite a stretch to suggest that drafting and preparing the complaint for filing took more than an hour, or that 1.3 hours were spent on drafting a motion for default judgment."). Here, aside from requesting an unbelievable number of hours, Mr. Lowe has also engaged in the practice of block billing. *See* Dkts. #36 ¶ 10 and #38 ¶ 10. Given this practice, the Court cannot adequately determine the amount of time spent on several of the tasks Mr. Lowe requests compensation for. However, even if he had not engaged in this practice, the Court finds it hard to believe that Mr. Lowe and his associate attorney spent hundreds of hours to prepare filings in LHF's related cases that are nearly identical to filings Mr. Lowe has previously used in other unrelated cases. *See, e.g.*, Case Nos. C16-371RSL and C14-1684RAJ.

Instead of awarding the unreasonable number of hours requested by LHF, the Court will award Mr. Lowe one (1) hour, at an hourly rate of $300, to compensate his firm for the time he worked on each named Defendant, and one (1) hour, at an hourly rate of $250, to compensate his firm for the time his associate attorney worked on each named Defendant. The Court will not award any of the time attributed to Mr. Lowe's legal assistant; review of the declarations submitted indicate that Mr. Lowe's legal assistant performed purely administrative tasks in this matter. *See* Dkt. #36 ¶ 10 (descriptions include "[p]repare waiver and request to waive

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 12

summons; Print and mail amended complaint, exhibits, and waiver documents"); *also* Dkt. #38 ¶ 10 (same).

The Court is satisfied that an attorneys' fee of $550 per defendant is reasonable and sufficient to cover Mr. Lowe's form-pleading work. The requested costs from each named Defendant can be recovered in full.

## IV.   CONCLUSION

The Court, having reviewed the relevant briefing and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

1. LHF's motions for default judgment (Dkts. #35 and #37) are GRANTED IN PART.

2. Defendants are hereby permanently enjoined from directly, indirectly, or contributorily infringing LHF's exclusive rights in the motion picture film *London Has Fallen*, including without limitation by using the Internet to reproduce or copy *London Has Fallen*, to distribute *London Has Fallen*, or to make *London Has Fallen* available for distribution to the public, except pursuant to lawful written license or with the express authority of LHF;

3. To the extent any such material exists, Defendants are directed to destroy all unauthorized copies of *London Has Fallen* in their possession or subject to their control;

4. Defendants are jointly and severally liable for statutory damages in the amount of $750;

5. Defendant Roselen Torres is individually liable for attorneys' fees in the amount of $550 and costs in the amount of $140.

6. Defendant Sherwin Mendoza is individually liable for attorneys' fees in the amount of $550 and costs in the amount of $140.

7. This matter is now CLOSED.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment consistent with this Order.

///

///

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 13

DATED this 15th day of February, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT - 14